IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TINA KENNEDY,  )
 )
    Plaintiff,  )
 )   No. 15 CV 8839
v.  )
 )   Hon. Charles R. Norgle
THE LUCENT TECHNOLOGIES INC. LONG  )
TERM DISABILITY PLAN FOR  )
MANAGEMENT OR LBA EMPLOYEES, et al.  )
 )
    Defendants.  )

## OPINION AND ORDER

On October 15, 2015, Plaintiff Tina Kennedy ("Plaintiff") sued The Lucent Technologies, Inc. Long Term Disability Plan for Management or LBA Employees (the "Plan") and Connecticut General Life Insurance Company ("CGLIC"), the Plan's administrator, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") §§ 502(e)(1) and 502(f).[1] Since filing her Complaint, Plaintiff voluntarily dismissed CGLIC, leaving the Plan as the sole remaining defendant. On August 31, 2016, the Plan countersued, claiming that it was entitled to equitable relief on the basis that Plaintiff falsely represented her disability status when she applied for benefits pursuant to the long term disability plan ("LTD Plan"). Before the Court are Plaintiff's and the Plan's cross motions for summary judgment. The motions encompass both Plaintiff's claim and the Plan's counterclaim. For the reasons that follow, Plaintiff's motion is denied as to her claim and granted as to the Plan's counterclaim, and the Plan's motion is granted as to Plaintiff's claim and denied as to its counterclaim.

---

[1] 29 U.S.C. §§ 1132(e)(1) and 1132(f).

## I. BACKGROUND

Plaintiff, a forty-eight year old woman, worked for Alcatel-Lucent USA, Inc. ("Alcatel-Lucent") as a product manager. The job required designing and installing advanced telephone systems for large medical providers and paid Plaintiff $120,000 per year. Her compensation also included long term disability benefits in the event that she became disabled. Plaintiff last worked at Alcatel-Lucent on either April 22, 2011 or April 28, 2011.[2] She applied for disability benefits from the Plan on August 10, 2011. After exhausting her short-term disability benefits, CGLIC approved Plaintiff's claim with a start date of October 28, 2011. Plaintiff initially received $6,000 per month, which amounted to sixty percent of her gross compensation. The LTD Plan defined "disability" or "disabled" as:

> [F]or the one-year period commencing immediately after the 26 weeks of Short-Term Disability Benefits have been paid, that the Eligible Employee is prevented by reason of such disability, other than accidental injury arising out of and in the course of employment at the Company, for which the Eligible Employee is qualified, based on training, education or experience. Thereafter, an Eligible Employee shall continue to be considered as disabled under the Plan if, in the sole opinion of the Claims Administrator [CGLIC], the Eligible Employee is determined to be incapable of performing the requirements of any job for any employer…for which the individual is qualified or may reasonably become qualified by training, education or experience, other than a job that pays less than 60 percent of the Eligible Employee's Eligible Pay that would have been in effect the day that the Eligible Employee's Short Term Disability Benefits ceased.

Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 2.[3] Thus, CGLIC retained full discretion to make disability determinations as the LTD Plan administrator.

Prior to the approval of her benefits, Plaintiff was also directed to apply for Social Security disability benefits and referred to Advantage 2000 ("Advantage") for help with the

---

[2] Plaintiff first states that she "ceased working" on April 22, 2011. Plaintiff's Rule 56.1 Statement of Facts ¶ 6. In the next paragraph, she states that April 28, 2011 was her "last day worked." Id. at ¶ 7. The Plan does not dispute either statement of fact.

[3] The parties dispute the precise provision that governs the definition, but the differing positions are immaterial with respect to the disposition of the motions before the Court. See The Plan's Response to Plaintiff's Rule 56.1 Statement of Facts ¶ 15.

2

application process.  She provided myriad medical records detailing conditions, treatments, and physical capability assessments.  The various impairments of which Plaintiff complained include, *inter alia*, lower extremity weakness, back pain, a history of spinal surgery, difficulty using her hands and arms, carpal tunnel syndrome, migraine headaches, and multiple sclerosis.  The parties dispute numerous facts pertaining to Plaintiff's physical ailments and the extent to which those conditions limited her ability to perform her job duties, but none of these factual disputes is material to the disposition of the motions before the Court.  Notably, Plaintiff and the Plan agree that Plaintiff has not been definitively diagnosed with multiple sclerosis.

On October 11, 2013, an administrative law judge ("ALJ") approved Plaintiff's Social Security disability award.  On November 20, 2013, the Plan was notified of that approval.  Plaintiff was awarded $2,178 per month, plus a forty-four dollar earnings increase, amounting to a total of $2,222.  Her payments were reduced by that amount, so that the Plan disbursed $3,778 monthly to Plaintiff.

Under the LTD Plan, the benefits were to be paid until the claimant was no longer disabled or turned sixty-five years of age.  Plaintiff received all monthly benefits without interruption through March 13, 2014 when she received a benefits termination letter.  On March 21, 2014, Plaintiff appealed the termination to no avail.  She appealed again with the assistance of counsel on November 10, 2014, but she again was unsuccessful.  CGLIC, who decided the appeal, considered the medical documentation that Plaintiff submitted, including the record from the ALJ's Social Security determination.

Plaintiff now lives in Carl Junction, Missouri.  Since leaving Alcatel-Lucent, Plaintiff asserts that she has not worked in any capacity.  The Plan disputes this, claiming that her deposition testimony and the administrative record from Plaintiff's Social Security case establish

otherwise. The Plan asserts that the disability benefits application that Plaintiff submitted to CGLIC stated "FRAUD WARNING" and that "falsification of any information provided in the form constitutes insurance fraud." Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts ("PRDSF") ¶ 30. On July 11, 2012, Plaintiff reported to the Social Security Administration ("SSA") that she could not pay bills, could not manage a savings account, could not sit for more than twenty minutes at a time, struggled to pay attention and finish tasks that she started, and had difficulty remembering spoken instructions.

On August 9, 2012, Plaintiff was listed as the registered agent in the articles of incorporation for Strategic Analysis, LLC ("Strategic Analysis"), a consulting company formed by Plaintiff's husband. She is still the registered agent as of the dates of the parties' submissions. Plaintiff testified, however, that she listed herself as the registered agent at the bank's suggestion when her husband set up the Strategic Analysis's account. She asserts that she received no compensation in that position and that she did not organize the company or perform any services other than nominal tasks like dropping off documents at the local bank and forwarding emails. The Plan states that Plaintiff swims regularly, to which Plaintiff responds that she only did so as part of her exercise regimen. She also travels to conventions and traveled without assistance to her deposition in Chicago, Illinois despite stating that travel is difficult for her.

Plaintiff now seeks relief in the form of receipt of all disability payments since the termination of her benefits and disability payments for as long as she meets the LTD Plan's terms and conditions. In its counterclaim, the Plan requests money damages as repayment for the overpayments that it believes were wrongfully disbursed to Plaintiff as a result of her alleged misrepresentations regarding her status as disabled.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law. Selective Ins. Co. of S.C. v. Target Corp., 845 F.3d 263, 265 (7th Cir. 2016), as amended (Jan. 25, 2017). Where parties file cross-motions for summary judgment, the standard of decision does not change. Id. The Court "take[s] the motions one at a time," Black Earth Meat Mkt., LLC v. Vill. of Black Earth, 834 F.3d 841, 847 (7th Cir. 2016), and "construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." Target Corp., 845 F.3d at 265 (internal quotation and citation omitted). "Thus, in ruling on a summary judgment motion, the district court must decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Packman v. Chicago Tribune Co., 267 F.3d 628, 637 (7th Cir. 2001) (internal quotations and citation omitted).

### B. The Decision to Terminate Plaintiff's Benefits Was Not an Abuse of Discretion

As an initial matter, the Court rejects Plaintiff's position that the Court should review CGLIC's termination of Plaintiff's benefits *de novo*. Plaintiff asserts that the Plan is identified as a fiduciary, therefore triggering a *de novo* review. In Metro. Life Ins. Co. v. Glenn, the Supreme Court addressed the application of the *de novo* standard in the context of discontinuing disability benefits. The Glenn Court explained that benefit determinations by fiduciaries are analogized to trustees of a common law trust and therefore require a *de novo* review. 554 U.S. 105, 111 (2008). However, "where the plan provides to the contrary by granting 'the administrator or fiduciary *discretionary authority* to determine eligibility for benefits'…'[t]rust principles make a

*deferential standard* of review appropriate.'" Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)) (emphasis and alteration in original).

Here, the LTD Plan includes within its definition of "disability" or "disabled" that the ultimate determination of whether Plaintiff qualifies falls within the sole discretion of CGLIC, the claims administrator. Pl.'s Mem. at 2; The Plan's Rule 56.1 Statement of Facts ("PSOF") ¶ 6. Thus, the terms of the LTD Plan granted the discretion necessary for the arbitrary and capricious standard to apply. See Glenn, 554 U.S. at 111; Hess v. Hartford Life & Acc. Ins. Co., 274 F.3d 456, 461 (7th Cir. 2001) (when reviewing a discretionary interpretation of an ERISA plan's terms, the district court only determines, under the deferential standard of review, whether the conclusion was arbitrary and capricious).

"The arbitrary or capricious standard is the least demanding form of judicial review of administrative action." Davis By & Through Farmers Bank & Capital Trust Co. of Frankfort, Ky. v. Ky. Fin. Cos. Ret. Plan, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted). When proceeding "[u]nder the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." Hess, 274 F.3d at 461 (internal quotations and citation omitted). "Moreover, a court must accept an administrator's rational decision, if it is not arbitrary or capricious, even in the face of an equally rational interpretation of a plan offered by a participant." Carty v. Metro. Life Ins. Co., 224 F. Supp. 3d 606, 616 (M.D. Tenn. 2016) (citing Gismondi v. United Techs. Corp., 408 F.3d 295, 298 (6th Cir. 2005)). Finally, the Court may not replace the administrator's reasonable interpretation of

6

disputed plan provisions with its own. Kutten v. Sun Life Assur. Co. of Canada, 759 F.3d 942, 944 (8th Cir. 2014).

The Court first addresses Plaintiff's claim seeking for the Court to order the Plan to pay long term disability benefits that are allegedly past due as a result of the claims administrator's wrongful benefits termination. The Court addresses both parties' motions for summary judgment on Plaintiff's claim simultaneously.

Plaintiff claims that because the Plan asserted to the SSA that Plaintiff was disabled, it cannot reverse course and later deny her disability benefits under the LTD Plan. Plaintiff cites to Glenn for support, but that case is distinguishable. In Glenn, the Supreme Court decided that there is a conflict of interest where an entity both determines an employee's eligibility for benefits and pays those benefits out of its own pocket. 554 U.S. at 108. The Supreme Court then instructed lower courts reviewing a denial to *consider as one of a number of factors* such a conflict in determining whether an abuse of discretion has occurred. Id. at 116 ("[C]onflicts are but one factor among many that a reviewing judge must take into account."). Here, CGLIC, who Plaintiff voluntarily dismissed—not the Plan—administrated the benefits plan and ultimately terminated Plaintiff's benefits with the full discretion granted by the terms of the LTD Plan. On the other hand, the Plan—the only remaining defendant—disbursed the money to Plaintiff. Thus, the conflict discussed in Glenn does not present the same concerns here and does not support a finding of an abuse of discretion.

Plaintiff also argues that the Plan directed her to apply for Social Security benefits and "referred her to Advantage, a vendor that had an ongoing business relationship with the Plan," Plaintiff's Rule 56.1 Statement of Facts ("PSOF") ¶ 18, for assistance with the application process. The Plan, on the other hand, contends that it did not refer Plaintiff to Advantage; rather,

7

the Plan asserts that CGLIC made the referral. Plaintiff's supporting record citation does not show that the Plan referred her to Advantage. Plaintiff directs the Court's attention to a letter instructing her to supply proof of her application for Social Security benefits. However, CIGNA Group Insurance[4] sent the letter, and the letter makes no mention of using Advantage's services in the Social Security application process. Plaintiff therefore fails to show that any referral made for the purpose of securing Social Security disability benefits generated a conflict of interest for the Plan or that somehow foul play was involved.

The Glenn Court's full consideration of the factors at play in that case further establishes that CGLIC did not make an arbitrary and capricious decision. Ultimately, the Court in Glenn affirmed the Sixth Circuit's decision to set aside a benefits denial, which had relied on the following five factors:

> (1) the conflict of interest; (2) MetLife's failure to reconcile its own conclusion that Glenn could work in other jobs with the Social Security Administration's conclusion that she could not; (3) MetLife's focus upon one treating physician report suggesting that Glenn could work in other jobs at the expense of other, more detailed treating physician reports indicating that she could not; (4) MetLife's failure to provide all of the treating physician reports to its own hired experts; and (5) MetLife's failure to take account of evidence indicating that stress aggravated Glenn's condition.

Id. at 110. Thus, even if there were a conflict of interest issue in this case, that factor—absent more—is not sufficient to meet the arbitrary and capricious standard. See Corry v. Liberty Life Assur. Co. of Boston, 499 F.3d 389, 398 (5th Cir. 2007) (citation omitted) (A court's review "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end.). Because courts consider numerous factors—only one of which is a potential conflict of interest—

---

[4] Cigna is a sister company of CGLIC. See Pl.'s Mem. at 9.

8

Plaintiff's attack on CGLIC's objectivity fails to trigger a finding of an arbitrary and capricious determination.

Plaintiff also asserts that the Plan ignored or tried to "discredit the Social Security finding," Pl.'s Mem. at 10, and essentially seeks to use the Social Security decision and certain doctors' reports as binding precedent.[5] As an initial matter, which Plaintiff ultimately concedes, Social Security cases are merely instructive; they are not binding. See id. ("Although this is not a Social Security case, the concepts from Social Security disability adjudications have been deemed *instructive*...) (internal quotation and citation omitted) (emphasis added); McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159, 1164 (7th Cir. 1997) (Representations to the SSA are "some evidence of the plaintiff's ability to perform the essential functions of a job...[but] in order to establish a genuine issue of material fact, the plaintiff must come forward with evidence other than the representations to the Social Security Administration."); see also Glenn, 554 U.S. at 117 ("[W]hen judges review the lawfulness of benefit denials, they will often take account of several different considerations...judges [] determine lawfulness by taking into account several different, often case-specific, factors, reaching a result by weighing them all together.") (internal citations omitted). Likewise, even if the benefits denial were at odds with a treating physician's opinion, that fact does not "create[] a presumption that the termination of benefits was arbitrary and capricious." Leger v. Tribune Co. Long Term Disability Ben. Plan, 557 F.3d 823, 832 (7th Cir. 2009).

---

[5] See e.g., Pl.'s Mem. at 11-12 ("The effort to distinguish both the FCE and Social Security determination understates the actual findings and misrepresents Kennedy's capacity"; "The FCE findings [] determined Kennedy's ability to sit, stand, and walk for prolonged periods was impaired"; "ALJ Brookins also determined that Kennedy was limited to only a 'range of sedentary work' due to hand limitations"; "ALJ Brookins, assisted by the testimony of an independent vocational expert, Steve Benjamin, found that Kennedy's manipulative limitations prevented her from working at her regular job and significantly reduced the sedentary occupational base. Thus, the Plan's explanation as to why it disregarded the Social Security determination is erroneous.").

9

Moreover, to the extent Plaintiff seeks to establish that the Social Security record was ignored in the decision making process, she is wrong. See PSOF ¶ 30-32 (stating that "there was no mention of the Social Security determination in [the reviewing doctor's] note"; "no mention is made of the Social Security finding"). The record shows that the medical records, including the Social Security record, were indeed reviewed as part of the decision to stop Plaintiff's benefit payments. For example, the letter notifying Plaintiff of the denial of her appeal contains a section explaining the information reviewed, and it explicitly states that her complete file and the additional Social Security Independent Medical Examination that Plaintiff supplied were analyzed. PSOF, Ex. 1, p.202 (CGLIC 199).[6] The letter also has a section titled "How Was Your Social Security Award Considered in the Claim Decision?" Id. (CGLIC 200). That section states:

> It is noted Ms. Kennedy was awarded SSD benefits by the SSA October 2013. However, based on *the review of the SSD law judge decision*, Ms. Kennedy was found capable of performing sedentary work and subsequent determination of less than sedentary in physical demand level is inconsistent with the examination findings of both the IME conducted on behalf of the SSA and the FCE requested by Ms. Kennedy's treating provider, Dr. Hardin.

Id. (emphasis added). This shows that, although Plaintiff may have disagreed with the outcome, the medical records—including those related to her Social Security case—were reviewed as part of the benefits termination decision. Plaintiff's mere disagreement falls far short of the evidence necessary to create a genuine issue of material fact in seeking to overturn an administrator's discretionary decision to terminate benefits.

The Court also agrees with the Plan that its evidence conclusively shows that CGLIC took a reasonable and principled approach and therefore did not abuse its discretion. First, the Court agrees with the Plan that Plaintiff's deposition testimony shows that CGLIC did not abuse

---

[6] Plaintiff filed as exhibits extensive discovery documents. This document is Bates stamped "CGLIC 199."

10

its discretion in terminating Plaintiff's benefits. As an initial matter, Plaintiff attempts to self-diagnose her way into winning this litigation. For example, she stated that she loses feeling in her hands and toes, her legs hurt when she sits too much, and she becomes fatigued. However, she says, "with the MS, [I am] not going to go into all of it," and "[a]s far as other diseases, I'm sure I've had them." DSOF, ex. 2, Plaintiff's Deposition ("Pl.'s Dep.") at 22:4-5, 22:17-18. The deposition testimony shows that Plaintiff in large part relies on an unconfirmed MS diagnosis and a self-generated assumption that other diseases plague her to the point that she cannot perform her job duties. Plaintiff's own diagnosis cannot supplant CGLIC's determination, as CGLIC retained sole discretion. See Brunker v. Schwan's Home Serv., Inc., 583 F.3d 1004, 1008 (7th Cir. 2009) ("Although Brunker suffers from multiple sclerosis, that fact alone does not prove that he is disabled under the ADA. Rather, we must consider the specific facts of Brunker's case.").

Plaintiff's testimony as to her level of activity also demonstrates that there was not an abuse of discretion. She testified, "I know I'm tan but it's because I have a pool and I go out in the morning and I swim." Pl.'s Dep. at 23:9-10. As the Plan points out, this belies her earlier statement to CGLIC that she could not exercise beyond short walks. Plaintiff also stated in her deposition that, although it may give her some anxiety, she works around the house, goes out to dinner, and goes to the grocery store. See id. at 23:13-24. Furthermore, Plaintiff also acknowledged at her deposition that she travels, including having gone to conventions. Plaintiff's ability to do these activities establishes that no rational trier of fact could find that CGLIC abused its discretion in determining that Plaintiff could complete her job of managing the design and installation of telephone systems. CGLIC had sole discretion, and the Court cannot

11

insert its own—let alone Plaintiff's—opinion when CGLIC had more than an ample factual basis for finding that Plaintiff did not meet the LTD Plan's definition of disabled.

The Court also agrees that Plaintiff's work with Strategic Analysis shows that it was not an abuse of discretion to find Plaintiff disabled under the LTD Plan's terms. Plaintiff conceded that she was the registered agent of Strategic Analysis. Her deposition testimony also reflects—despite her assertion to the contrary—that her mental acuity was not sufficiently impaired to prevent her from undertaking her job duties at Alcatel-Lucent. For example, she explained that as an IT person, she understands algorithms used to run Strategic Analysis. Additionally, she delivered documents to the bank and, in fact, opened the Strategic Analysis' bank account. When deposed, Plaintiff was also asked about Strategic Analysis' tax information. She confirmed an understanding of the IRS Form 1040 presented at the deposition and the financial income reported in the IRS schedule C form. Accordingly, in addition to the physical capabilities discussed above, the record shows that CGLIC could not have abused its discretion in determining that Plaintiff was not disabled under the terms of the LTD Plan.

Ultimately, the record shows that there was no conflict of interest, CGLIC incorporated the Social Security evidence in its decision to terminate Plaintiff's benefits, and Plaintiff posits no other material challenge to the administrator's decision. As to the Plan's arguments, it sets forth extensive evidence regarding Plaintiff's level of activity, her attempt to self-diagnose, and as stated above, its comprehensive review of Plaintiff's status, including the Social Security record. This shows that the claims administrator had reasonable basis for its decision to terminate Plaintiff's benefits.

In light of the foregoing analysis, Plaintiff has failed to set forth evidence that shows an arbitrary and capricious decision to terminate her benefits, and her motion for summary

judgment is denied as to her claim seeking recovery of overdue payments. The Plan, on the other hand, has established that a trier of fact could not find in favor of Plaintiff. Summary judgment is granted in favor of the Plan.

**C. Plaintiff Did Not Intentionally Misrepresent Her Disability Status**

The Court turns to the Plan's argument that it is entitled to summary judgment on its counterclaim for equitable estoppel. The parties do not dispute the elements necessary to prevail on such a claim. "[T]o prevail on an estoppel claim under ERISA…plaintiffs [must] show: (1) a knowing misrepresentation; (2) made in writing; (3) reasonable reliance on that representation by them; (4) to their detriment." Kannapien v. Quaker Oats Co., 507 F.3d 629, 636 (7th Cir. 2007) (citation omitted).

The Plan argues that "Plaintiff knowingly made, in writing, multiple misrepresentations of her functional capacity and activities for Strategic Analysis during the administration of her claim and appeal." Plan's Consolidated Memorandum in Support of Mot. for Summ. J. and in Opp. of Pl.'s Mot. for Summ. J. at 16. In support, the Plan asserts that Plaintiff, in order to obtain disability benefits, stated that she was not working, could not return to work, had limited ability to exercise, and could not pay bills or manage a savings account. The Plan further states that Plaintiff served as Strategic Analysis's registered agent, made deposits into the into the company's savings account, and traveled from Missouri to Chicago by herself for her deposition and therefore misrepresented her status as disabled.

The Court rejects the Plan's contention. The Plan sets forth no evidence supporting the proposition that Plaintiff *knowingly* made a misrepresentation. As set forth in detail above, CGLIC was well within its discretion to determine that such facts contributed to a finding that Plaintiff not disabled under the LTD Plan. That, however, does not mean that Plaintiff did not

legitimately hold the belief that she was entitled to benefits given the factual palette of the case. For example, she could legitimately believe that the extent to which she worked for Strategic Analysis did not constitute the ability to work pursuant to the LTD Plan. The Plan does nothing to establish that Plaintiff believed or should have believed that her ability to *deposit money* equated to the ability to *manage* an account—the activity that she stated she could not do. The Plan also fails to set forth any evidence whatsoever that Plaintiff did not have trouble traveling to her deposition. Instead, the Plan only establishes the fact that she did travel to her deposition; but the ability to travel in the first instance does not establish that one does so absent any difficulty. As to swimming exercise, it would be reasonable and within a claims administrator's discretion—such as in this case—to find that such evidence shows the ability to complete one's job duties. It is not, however, an unreasonable or a knowing misrepresentation for Plaintiff to believe that rehabilitation exercises in the pool did not undermine her status as disabled with respect to the terms of the LTD Plan. Finally, the Court agrees with Plaintiff that the Plan's attempt to utilize its own attorney's perception of Plaintiff's mental acuity and demeanor fails to support the Plan's motion for summary judgment. Thus, the Plan's motion is denied as to its claim for equitable estoppel.

The undisputed facts enumerated above not only show that the Plan's contention is mistaken, but also that Plaintiff has established that she indeed believed that the various activities that the Plan attacks did not undermine her status as disabled under the terms of the LTD Plan. The honest belief—even if incorrect—establishes that Plaintiff could not have made a knowing misrepresentation. The Plan has set forth no evidence from which a trier of fact could infer that Plaintiff had the state of mind necessary to support its claim for equitable estoppel. Consequently, the Plan's motion is denied. Conversely, the record is so one-sided in showing

that Plaintiff honestly believed that she met the LTD Plan's definition of disabled, that she could not have made a knowing misrepresentation. Accordingly, summary judgment is granted in Plaintiff's favor as to the Plan's equitable estoppel claim.

### III. CONCLUSION

CGLIC's decision, in its capacity as claims administrator, to terminate Plaintiff's benefits was not arbitrary and capricious. Rather, CGLIC had sole discretion under the plain terms of the LTD Plan to make such a determination, and the decision was made based on a comprehensive review of the facts surrounding Plaintiff's condition, including the record from the SSA's award of disability benefits. On the other hand, the record is lacking the evidence necessary to show that Plaintiff knowingly deceived CGLIC when she sought disability benefits under the LTD Plan. Even giving the Plan the benefit of the doubt, the record establishes that Plaintiff at most wrongly, but not unreasonably, believed her activities were within the LTD Plan's definition of disabled. Accordingly, the Plan's motion for summary judgment is granted as to claim that CGLIC abused its discretion in terminating her benefits, and Plaintiff's motion is denied. As to the Plan's equitable estoppel claim, summary judgment is granted in favor of Plaintiff, and the Plan's motion is denied.

IT IS SO ORDERED.

ENTER:

/s/ Charles Norgle

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: September 13, 2017